UNITED STATES OF AMERICA

v.

DAVID HOWELL PETRAEUS,

Defendant.

## MEMORANDUM IN SUPPORT OF MOTION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, THE ASSOCIATED PRESS, BLOOMBERG L.P., THE CHARLOTTE OBSERVER PUBLISHING COMPANY, DOW JONES & COMPANY, INC., FIRST LOOK MEDIA, INC., NATIONAL PUBLIC RADIO, INC., THE NEW YORK TIMES COMPANY, AND THE WASHINGTON POST TO INTERVENE AND UNSEAL

The Reporters Committee for Freedom of the Press, The Associated Press, Bloomberg L.P., The Charlotte Observer Publishing Company, Dow Jones & Company, Inc., First Look Media, Inc., National Public Radio, Inc., The New York Times Company, and The Washington Post (collectively, the "News Media Intervenors") hereby submit this Memorandum in support of their motion to intervene in the above-captioned matter for the limited purpose of seeking an order unsealing (1) the Sentencing Memorandum and attachments thereto filed under seal by counsel for David Howell Petraeus ("Defendant" or "Petraeus") on April 15, 2015 (ECF No. 17) and (2) any statements or letters of support submitted to the Court on behalf of Defendant in connection with his sentencing.

## BACKGROUND

Petraeus was the Director of the Central Intelligence Agency ("CIA") until his resignation in November 2012. On March 3, 2015, Petraeus was charged in this Court in connection with alleged unauthorized disclosures of classified material. On April 23, 2015, Petraeus pleaded guilty to unlawfully removing and retaining classified materials at unauthorized locations, and was sentenced in open court. Although Petraeus's sentencing proceeding was public, the Sentencing Memorandum he filed, as well as letters submitted to the Court in support of Defendant in connection with his sentencing, are under seal and unavailable to the public.[1]

Because Petraeus served as a high-ranking government official, and pleaded guilty to a charge involving the mishandling of classified information, the public has an especially strong interest in obtaining a full understanding of the circumstances surrounding his prosecution, guilty plea, and sentence. Indeed, the prosecution and outcome of Petraeus's case has garnered significant attention from the press and the public.[2] Moreover, in other, similar prosecutions of defendants who have pleaded guilty to charges relating to alleged leaks of classified information, the sentencing memoranda are public. *See, e.g., United States v. Kim*, No. 1:10-cr-00225

---

[1] During Defendant's sentencing hearing, the Court reportedly cited letters submitted in connection with that proceeding that "paint a portrait of a man considered among the finest military leaders of his generation who also has committed a grave but very uncharacteristic error in judgment." Ken Otterbourg & Andrew Grossman, *Gen. David Petraeus Avoids Jail Time, to Pay $100,000 Fine*, The Wall Street Journal (Apr. 23, 2015, 6:06 P.M.), http://goo.gl/t9N6oG. Thirty-four letters were reportedly submitted from "high-level political leaders, heads of state, and military personnel in support" of Defendant. Elizabeth Chuck & Terry Pickard, *Ex-CIA Director David Petraeus Gets Probation, Fine for Leaking Secrets*, NBC News (Apr. 23, 2015, 11:19 A.M.), http://goo.gl/3FSFiZ.

[2] *See, e.g.*, Michael S. Schmidt & Matt Apuzzo, *David Petraeus Is Sentenced to Probation in Leak Investigation*, N.Y. Times (Apr. 23, 2015), http://nyti.ms/1OOV3R3; Justin Wm. Moyer, *Gen. David Petraeus: From hero to zero*, Washington Post (Apr. 24, 2015, 3:44 A.M.), http://wapo.st/1da7RGg; Mitch Weiss, *Petraeus sentenced to 2 years' probation for military leak*, Associated Press (Apr. 23, 2015), news.yahoo.com/ex-cia-chief-sentenced-leaking-military-secrets-083343076.html.

(D.D.C. filed Mar. 24, 2014), ECF Nos. 285 and 286; *United States v. Kiriakou*, No. 1:12-cr-127 (E.D. Va. filed Jan. 18, 2013), ECF Nos. 124 and 126. And access to those documents, which reflect the parties' arguments for and against leniency in sentencing, have enabled the public to evaluate prosecutors' and the courts' handling of those cases that implicate national security concerns, a matter of the utmost public interest. Petraeus's Sentencing Memorandum and the letters submitted to the Court in connection with his sentencing should, likewise, be public.

## ARGUMENT

### I. Openness is a bedrock principle of the American criminal justice system.

For centuries, openness has been "an indispensable attribute" of the criminal trial. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980). As the Supreme Court has recognized, secrecy breeds "distrust" of the judiciary and its ability to adjudicate matters fairly. *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966). The benefits of an open and transparent criminal justice system are manifold, both to the defendant and the public. Openness gives "assurance that the proceedings [are] conducted fairly to all concerned, and it discourage[s] perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers*, 448 U.S. at 569; *see also Company Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) ("Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness.") (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)).

The nexus between openness and fairness in criminal proceedings and the role of the press is well-established. "A responsible press has always been regarded the handmaiden of effective judicial administration, especially in the criminal field. . . . The press does not simply

3

Case 3:15-cr-00047-DCK   Document 22   Filed 04/27/15   Page 3 of 12

publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism." *Sheppard*, 384 U.S. at 350 (internal quotation marks and citations omitted). Indeed, as the U.S. Supreme Court has recognized, the media serves an important role in facilitating public scrutiny of judicial processes. *See Richmond Newspapers*, 448 U.S. at 572–73 ("Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media. . . ."). Thus, while "media representatives enjoy the same right of access as the public," they "function[] as surrogates for the public" by attending court proceedings, reviewing court documents, and reporting on what has transpired. *Id.*

## II. The press and the public have a constitutional and common law right to access sentencing memoranda and sentencing letters.

The First Amendment guarantees the press and the public a presumptive right of access to criminal trials, as well as other pre- and post-trial documents and court proceedings. *Richmond Newspapers*, 448 U.S. at 580–81. While not absolute, that constitutional presumption of openness may be overcome "*only* by an overriding interest based on findings that closure is *essential* to preserve higher values and is *narrowly tailored* to serve that interest." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*") (emphasis added); *see also In re Charlotte Observer*, 882 F.2d 850, 853 (4th Cir. 1989) (reversing trial court order closing change of venue hearing and sealing documents related thereto). In addition to the presumptive right of access guaranteed by the First Amendment, the common law provides a right to access court documents that play a role in the "adjudicatory process." *Nixon v. Warner Commc'ns, Inc.* 435 U.S. 589, 597–98 (1978).

4

The presumption of access to criminal proceedings guaranteed by the First Amendment applies to sentencing hearings and documents filed in connection therewith. *See In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) ("we hold that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves"); *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (stating that the First Amendment right of access applies to "sentencing hearings and to documents filed in connection with such hearings"); *see also In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (stating that "courts of appeals have also recognized a First Amendment right of access to documents filed for use in sentencing proceedings," and citing cases from the Second, Ninth, Eleventh, and D.C. Circuits). This includes sentencing memoranda submitted by prosecutors and defendants. *Id.* Indeed, courts "consistently hold that sentencing memoranda should not be kept under seal," and evaluate the public's right to access those documents by applying First Amendment standards. *United States v. Taylor*, No. 5:07-cr-00123, 2008 WL 161900, at *1 (S.D.W. Va. Jan. 15, 2008) (holding that First Amendment right of access applied to sentencing memoranda, and noting that sentencing memoranda "do not contain the type of information that typically outweighs the public's right of access"); *see also, e.g., United States v. Fretz*, No. 7:02-cr-67-1-F, 2012 WL 1655412, at *3–*4 (E.D.N.C. May 10, 2012) (granting a motion to intervene and unsealing a motion for downward departure, a motion for reduction of sentence, and a motion to amend a sentence, on First Amendment grounds); *United States v. Dare*, 568 F. Supp. 2d 242, 244 (N.D.N.Y. 2008) ("It is well-recognized that the public has a strong right to sentencing memoranda under the First Amendment.").

The Fourth Circuit has never explicitly addressed whether there is a First Amendment right of access to letters submitted to the court for use in sentencing. U.S. Supreme Court and Fourth Circuit precedent, however, indicates that the constitutional presumption of access should apply to such letters, which are submitted in connection with a traditionally public process—a criminal defendant's sentencing—and shed light on the court's decision-making process as it relates to what sentence should be imposed upon the defendant. *See In re Washington Post*, 807 F.2d at 388–90 (holding a First Amendment right applies to documents related to sentencing); *see also Company Doe*, 749 F.3d at 265 (stating that it is "well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings"); *United States v. Chanthaboury*, No. 2:12-cr-00188-GEB, 2013 WL 6404989, at *1 (E.D. Cal. Dec. 6, 2013) (stating that the First Amendment right of access applies to sentencing proceedings and related materials submitted to the court, including "'letters submitted in support of the defendant's sentencing submissions'") (quoting *United States v. King*, No. 10-cr-122 (JGK), 2012 WL 2196674, at *1 (S.D.N.Y. June 15, 2012)).[3]

Moreover, the common law right of access also applies to sentencing letters because they are "judicial records" that, like sentencing memoranda, plainly "play a role in the adjudicative process, . . . ." *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.2d 283, 290 (4th Cir. 2013); *see also Cochran v. Volvo Grp. N.A., LLC*, 931 F. Supp. 2d 725, 728 (M.D.N.C. 2013) (finding a common law right of access attaches to documents "relied

---

[3] In determining whether a First Amendment right of access attaches, courts consider "whether the place and process" at issue "have historically been open to the press and general public," as well as "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). Both "experience and logic" dictate that letters submitted in connection with a criminal defendant's sentencing proceeding are presumptively open to the public as a constitutional matter. *Id.*; *see also In re Washington Post*, 807 F.2d at 388–90.

upon or considered by the Court"); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (holding that a common law right of access applies to documents "relevant to the performance of the judicial function and useful in the judicial process"). Indeed, other federal courts have expressly held that sentencing letters are judicial records to which the press and the public have a right to access under common law. *See United States v. Kravetz*, 706 F.3d 47, 58 (1st Cir. 2013) (holding a presumptive right of access applies to both "letters annexed to the parties' sentencing submissions" and "letters sent directly to the court by third parties"); *United States v. Byrd*, 11 F. Supp. 3d 1144, 1149 (S.D. Ala. 2014) (sentencing letters "are judicial records that are subject to the public right of access set forth in the common law"); *United States v. Tangorra*, 542 F. Supp. 2d 233, 237 (E.D.N.Y. 2008) (finding a common law right of access to sentencing letters, and stating that "documents submitted by the Defendants to aid the court in the judicial function of sentencing" are presumptively open to the public, even when the court does "not rely on the documents in reaching its sentencing decision").

In short, the First Amendment and common law both provide a right of access to sentencing memoranda and sentencing letters and, accordingly, these documents may only be sealed in limited circumstances. Where the First Amendment guarantees a right of access, documents may be sealed only when "necessitated by a compelling government interest," and any sealing order entered must be "narrowly tailored to serve that interest." *In re Time Inc.*, 182 F.3d at 271 (quotation marks omitted); *see also In re Washington Post*, 807 F.2d at 390 (stating that documents subject to a First Amendment right of access may be sealed only if withholding is "'essential to preserve higher values and is narrowly tailored to serve that interest'") (quoting *Press-Enterprise I*, 464 U.S. at 510). Under common law, the presumption of access may be overcome only where a court finds "a 'significant countervailing interest' in support of sealing

that outweighs the public's interest in openness." *In re Application of the U.S.*, 707 F.2d at 293 (quoting *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003)). In conducting the common law analysis, a court may consider (1) "whether the records are sought for improper purposes," (2) "whether release would enhance the public's understanding of an important historical event," and (3) "whether the public has already had access to the information contained in the records." *Id.* (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

### III. Defendant's Sentencing Memorandum and the sentencing letters submitted to the Court should be unsealed.

The Sentencing Memorandum and sentencing letters submitted to the Court should be unsealed because no sufficiently weighty interests overcome the First Amendment and common law presumptions of access that apply to those documents. In determining whether the sealing of a document is justified, courts in this Circuit "must follow the procedures established in *In re Charlotte Observer*." *In re Washington Post*, 807 F.2d at 390 (stating that "the same procedures are required for the evaluation of both common-law and First Amendment access claims"). Specifically, the court must (1) provide public notice that the sealing of documents may be ordered, (2) provide interested persons an opportunity to object before sealing is ordered, (3) state the reasons, supported by specific findings, for any decision to seal documents, and (4) state why it rejected alternatives to sealing. *Id.* (citing *In re Charlotte Observer*, 882 F.2d at 853).

Here, Defendant's Sentencing Memorandum was filed under seal, and the sentencing letters sealed or otherwise withheld from the public, without any sealing order having been entered, and without the Court having conducted the analysis required by the First Amendment and common law. Thus, to date, neither the Court nor the parties have identified any interest that would justify keeping these documents shielded from public view. Given the public's constitutional right of access to the Sentencing Memorandum and the sentencing letters, absent

judicial findings that their sealing is "essential" to serve a "compelling government interest," the seal cannot be maintained. And, even if the Court were to identify a "compelling government interest" that requires some portion of the Sentencing Memorandum, the attachments thereto, or the sentencing letters, to remain under seal, such sealing should be no broader than necessary to serve that interest, *In re Time Inc.*, 182 F.3d at 271, and redacted versions of those documents should be unsealed forthwith.[4] Likewise, in light of the public's strong interest in openness in this case, there is no countervailing interest that can overcome the common law presumption of access. *In re Application of the U.S.*, 707 F.2d at 293.

The public has a particularly powerful interest in obtaining access to the Sentencing Memorandum and the sentencing letters at issue here. The prosecution of Defendant, a four-star general and former head of the CIA who served at the highest levels of the U.S. government, for mishandling classified information is a matter of serious public concern, and much has already been reported to the public about his prosecution, plea agreement, and sentencing. Defendant's sentencing hearing was held in open court, with members of the public and media in attendance, and access to the Sentencing Memorandum, as well as the sentencing letters, submitted in connection with that hearing will enhance the public's understanding of what transpired,

---

[4] To the extent Defendant interprets Local Criminal Rule 55.1(H) to permit the wholesale sealing of sentencing memoranda without a court order supported by judicial findings justifying sealing, it misreads that rule, and ignores the requirements of *In re Charlotte Observer*. Local Criminal Rule 55.1 states, in pertinent part, that "[a]ll portions of pleadings, motions and objections which incorporate or refer to a defendant's pre-sentence report shall, if filed, be filed under seal. No motion to seal shall be required for such materials." L. Crim. R. 55.1(H). Sentencing memoranda are distinct from presentence investigation reports. *See United States v. Hargrove*, 701 F.3d 156, 164 (4th Cir. 2012) (referring to presentence reports and sentencing memoranda separately); *see also United States v. Inserra*, No. 88-CR-104, 1990 WL 101055, at *1 (N.D.N.Y. July 16, 1990) ("As counsel are aware, presentence investigation reports are created by an arm of the court, the probation department, and sentencing memoranda are written by counsel . . . ."). And Local Criminal Rule 55.1, on its face, does not pre-authorize the sealing of all sentencing memoranda in their entirety. Indeed, for the reasons set forth herein, any such rule would not pass constitutional muster.

including the sentence that was ultimately imposed by this Court. Moreover, the public has a heightened interest in access to the sentencing letters because they were reportedly written by current and former high-level public officials, which weighs heavily in favor of public disclosure. *See United States v. Gotti*, 322 F. Supp. 2d 230, 251 (E.D.N.Y. 2004) (stating that "[l]etters received by public officials seeking to use their offices to impact a sentence will invariably be disclosed").

## CONCLUSION

For these reasons, the News Media Intervenors respectfully request that the Court grant their motion to intervene and unseal, and that it enter an order immediately unsealing the Sentencing Memorandum and attachments thereto filed by Defendant, as well as the letters submitted to the Court in connection with Defendant's sentencing.

This the 27th day of April, 2015.

Respectfully submitted,

/s/ Jonathan E. Buchan
Jonathan E. Buchan
N.C. Bar No. 8205
Brian P. Troutman
N.C. Bar No. 40131
MCGUIREWOODS LLP
201 North Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 343-2063
Facsimile: (704) 444-8714
jbuchan@mcguirewoods.com
btroutman@mcguirewoods.com

Katie Townsend*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW

Washington, DC
202.795.9303
202.795.9310 (fax)
ktownsend@rcfp.org
* *Pro hac vice* admission pending

*Counsel for the News Media Intervenors*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum in Support of Motion of the Reporters Committee for Freedom of the Press, The Associated Press, Bloomberg L.P., The Charlotte Observer Publishing Company, Dow Jones & Company, Inc., First Look Media, Inc., National Public Radio, Inc., The New York Times Company and The Washington Post to Intervene and Unseal was filed with the Clerk of Court and served via email and U.S. Mail on counsel for all parties, as set forth below.

James P. Melendres
National Security Division
600 E. Street NW, 10th Floor
Washington, DC 20005
james.p.melendres@usdoj.gov
*Attorney for Plaintiff*

Jill Westmoreland Rose
United States Attorney
100 Otis Street
Asheville, NC 28801
jill.rose@usdoj.gov
*Attorney for Plaintiff*

Richard S. Scott
National Security Division
600 E Street NW, 10th Floor
Washington, DC 20005
richard.s.scott@usdoj.gov
*Attorney for Plaintiff*

David E. Kendall
Williams & Connolly LLP
725 Twelfth Street NW
Washington, DC 20005
dkendall@wc.com
*Attorney for Defendant*

Simon A. Latcovich
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005
slatcovich@wc.com
*Attorney for Defendant*

Jacob H. Sussman
Tin Fulton Walker & Owen, PLLC
301 Park Avenue
Charlotte, NC 28203
jsussman@tinfulton.com
*Attorney for Defendant*

This the 27th day of April, 2015.

/s/ Jonathan E. Buchan